STATE *EX REL.* SCHOOL DISTRICT v. RICE.

1. The law fixes a school month, and declares this to be the unit of computation, and directs an apportionment of the school fund among the several school districts in proportion to the average attendance for the last preceding year. It further requires the State superintendent of education to prescribe regulations necessary for this purpose. *Held,* that the duty thus imposed upon this officer required discretion and judgment, and he, having prescribed regulations, could not be compelled by mandamus to change them.
2. The law having fixed a school month, but not a school year, there does not seem to be any error on the part of the superintendent of education in fixing the number of months a school may be in session as a school year, even though the length of session is not the same in the several school districts.
3. In view of the fact, that the fund raised under the constitutional two mill tax is insufficient to keep the public schools open for six months, it is doubtful whether the provision in article X., section 3, requiring the public schools to be kept open for at least six months in each year, has any application to this fund.

This was a petition by School District No. 14, of Fairfield

7—32

County, for a writ of mandamus from this court against James H. Rice, State superintendent of education. The opinion states the case.

Messrs. *McDonald & Douglass* and *Henry N. Obear*, for relator.

Mr. *Earle*, attorney general, contra.

February 18, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This is a petition in the original jurisdiction of this court for a mandamus, compelling the respondent, James H. Rice, State superintendent of education, "to make and promulgate such regulations, prescribing the method of apportioning the income of the school tax among the several school districts in each county, as shall be in conformity with the constitution and laws of the State regulating the subject," &c.

The act of 1881, "To prescribe the mode of ascertaining the average attendance on the free public schools of the State, and to apportion the school fund according to such attendance," now embodied in section 1015 of the General Statutes, provides as follows: "The school month shall consist of twenty school days, and this number shall be taken as the unit of compensation (computation) in estimating the average attendance of each pupil in the free public schools of this State. For the school year 1882–1883, and for each school year thereafter, each county school commissioner shall apportion the income of the school fund among the several school districts of his county, in proportion to the average attendance upon the free public schools for the last preceding year, as ascertained by this section. The State superintendent of education is authorized and required to prescribe such regulations as may be necessary to enforce the provisions of this section," &c.

Superintendent Rice, for the purpose of carrying out and enforcing the provisions of the above law, made and published the following regulations:

"Rule 1. To find the average attendance of one school for one school month, add the number of pupils each day, and divide the sum by twenty.

"Rule 2. To find the average attendance of one school for one school year, add the averages as found by rule 1, and divide the sum by the number of school months that the school has been in session.

"Rule 3. To find the average attendance of a school district for one school year, add the averages as found by rule 2.

"Rule 4. To find the average attendance in a county for a school year, add the averages as found by rule 3.

"Rule 5. To apportion the school fund, divide the proceeds of the school tax by the average attendance of a county, as found by rule 4, and multiply the quotient by the average attendance of the several school districts. The products thus obtained will be the amounts to which the respective school districts will be entitled."

These rules are certainly condensed and pregnant, but the petitioners allege that they "do not comport with the constitution and laws of the State, in this, that they prescribe as a school year the number of school months each school has been in session, thus creating a different school year for each separate school; whereas the relators insist that under the constitution of this State the school year in any school district consists of the period during which the school longest in session in said school district is in session; and, provided, in no event can the school year be less than six months. The relators submit that the regulations should be made to conform to the constitution and laws, by adding a regulation, that a school year in each school district shall consist of the period which the longest in session in such district shall be in session, but that in no event shall a school year be less than six months; and by striking out the words, "that the school has been in session," at the end of rule 2, and by substituting for it the words, "in the school year."

If the superintendent of education had omitted or refused to make the regulations required by the act, he might have been put in motion by mandamus, and required to make the regulations, as he was expressly required to do. But we think the duty imposed upon him required discretion and a high degree of judgment. and not being a plain ministerial duty, but judicial or quasi-judicial in character, and having already performed the duty

assigned him to the best of his judgment, we think mandamus will not lie against him.    As we said in *Ex parte Mackey*, 15 S. C., 330 : "A writ of mandamus is the highest known to the law, and, according to the well established and long approved authorities, only issues where there is a specific legal right to be enforced, or where there is a positive legal ministerial duty to be performed which can be performed, and where there is no other specific remedy.    When the legal right is doubtful, or when the performance of the duty rests in discretion, or when there is other adequate remedy, a writ of mandamus cannot rightfully issue.    See *High Ex. Leg. Rem.*, § 9 ; *Ex parte Lynch*, 16 S. C., 38 ; *County of Richland* v. *Miller*, *Ibid.*, 236 ; *Port Royal Mining Co.* v. *Hagood*, 30 *Id.*, 519.

But if this court could by mandamus correct "an error" of the superintendent of education, in prescribing such rules as he considered necessary to enforce the law, it is far from clear that there was any "error."    There can be no doubt that the act of the legislature, in accordance with the express terms of the two mills constitutional amendment, directs that the proceeds of that tax "shall be distributed among the several school districts in proportion to the respective number of pupils attending the public schools." That number could not, in advance, be ascertained with absolute certainty—by actual count.    The only course then left was to approximate the number by taking the average attendance in the previous year, which was adopted by the act, with instructions to the superintendent of education "to prescribe such regulations as may be necessary to enforce the law."    This he endeavored to do by the several short condensed rules before stated.

As we understand it, there is no objection to rule 4, which prescribes the mode of ascertaining the average attendance the year previous for a county ; nor to rule 3, to ascertain the average attendance for a school district.    But the complaint is made that rule 2 operates unfairly as between different schools of the same school district, in this, that the average in them which are kept open the longest period in a year is reduced, thus giving them less of the school fund, when in justice they should have more. Does it follow that the average of a long term must necessarily be lower than that of a shorter term ?    May not the same number

of pupils attend through the long term? Possibly, from the ordinary accidents, misfortunes, and disappointments, the chances of falling off in a long term may be greater than in a short term. That, however, would seem to be too uncertain and conjectural to enter as an element into the formation of fixed rules. Besides, the act of the legislature positively directs that the school fund shall be distributed in proportion to the average attendance upon the schools for the last preceding year. It will be observed, that while the legislature fixed the public school month, it did not fix the public school year, and it is stated that, in consequence, the schools are kept open for different periods. It does not seem to us that the superintendent is in any way responsible for this, or that he had the power to supply the deficiency. Until the proper law-making body sees fit to fix the period of the public school year, it is not clearly perceived what basis the superintendent could take, in reaching the average attendance for the year previous, other than "the months the school was in session," whether that was three, six, or nine months.

Some stress seems to be laid on section 3, article X., of the Constitution, which declares that "the general assembly shall, as soon as practicable after the adoption of this Constitution, provide for a liberal and uniform system of free public schools throughout the State. * * * There shall be kept open at least six months in each year one or more schools in each school district," &c. But in 1878 the Constitution itself was amended by the adoption of the two mills school tax, which carefully provides the mode for distributing the funds to be raised under it, but makes no reference whatever to keeping open in each school district one or more schools for at least six months in each year. The fact is, that this provision in the Constitution of 1868, requiring schools "to be kept open for at least six months in a year," like that other provision, that the schools should be "free and open to all," with compulsory attendance, was only intended to go into operation as a part of the general system, with the establishment of which the general assembly was charged. We very much doubt whether that provision has any proper application to the school fund arising under the two mills constitutional amendment for several reasons, and especially for the very conclusive one, that, as we are

informed, the fund arising under the amendment is not sufficient to support the public schools for more than three or, at the most, four months in the year.

The judgment of the court is, that the petition for a writ of mandamus be refused.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McIVER concurred in the result.